# FORD *v.* FORD.*

ANCIENT DOCUMENTS; DEEDS; ACKNOWLEDGMENTS; EVIDENCE; EJECTMENT; TRIAL; DIRECTION OF VERDICT.

1. A deed more than thirty years old is an ancient document, and proves itself.

*Ancient Documents.*—The American and English authorities determining the necessity of proving ancient documents by subscribing witnesses are presented and discussed in editorial note to *Garrett* v. *Hanshue,* 35 L. R. A. 341.

2. If the name of the grantor in a deed is signed by another in the presence of the grantor and at his instance or with his assent, the deed is the act of the grantor.

3. A certificate of acknowledgment to a deed is prima facie proof of the facts it contains, if within the acknowledging officer's range, but is open to rebuttal between the parties by proof of gross concurrent mistake or fraud. In favor of purchasers for valuable consideration without notice, it is conclusive as to all matters which it is the duty of the acknowledging officer to verify, if he has jurisdiction. As to all other persons, it is open to dispute.

4. Where, in an ejectment suit, the defendant produces a deed executed and acknowledged in due form, from the plaintiff to the defendant, of the land in controversy, and the unsupported testimony of the plaintiff is that the deed is a forgery, while all of the circumstances in evidence tend to show that the deed is genuine, the plaintiff's evidence is legally insufficient to support a verdict in his favor; and it is therefore error for the trial court not to direct a verdict for the defendant.

5. When the evidence, with all the inferences which the jury can justifiably draw from it, is not sufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.

No. 1606. Submitted February 13, 1906.    Decided May 1, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury directed by the court, in an action of ejectment.                                   *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action of ejectment by Joseph C. Ford the appellee, against Mary F. Ford, the appellant, in the supreme court of the District of Columbia, to recover parts of lots 20, 21, and 22 in square 388 in Washington, the lots being particularly described in the declaration.

At the trial the appellee, the plaintiff below, introduced a deed from Thomas Bulfinch to Mary A. Ford, dated November 20th, 1854. This deed was the common source of title. The appellee testified that Mary A. Ford was his mother, that she

died intestate before the War, that her husband, Herbert Ford, and the appellee, her child, survived her, and that his father, Herbert Ford, died December 14, 1901. It was admitted that the appellant had long been, and was at the time of the trial, in possession of the property in controversy.

The appellant introduced in evidence a deed dated June 2, 1874, purporting to be executed and acknowledged by Herbert Ford and Joseph C. Ford, the appellee, conveying the property in controversy to Charles B. Church in fee simple as trustee. The consideration recited is $500, and the deed further recites that Herbert Ford and Joseph C. Ford are the husband and heir at law respectively, of Mary Ann Ford, deceased. The grantors signed by making their respective marks. The deed purports to have been signed, sealed, and delivered in the presence of Edward H. May, notary public, and the following is the acknowledgment of the deed:

District of Columbia, } ss:
City of Washington.     }

I, Edward H. May, notary public in and for the county aforesaid, in said District, do hereby certify that Herbert Ford and Joseph C. Ford, parties to a certain deed, bearing date on the second day of June, A. D., 1874, and hereto annexed, personally appeared before me in the county aforesaid, the said Herbert Ford and Joseph C. Ford being personally well known to me to be the persons who executed the said deed, and acknowledged the same to be their act and deed.

Given under my hand and notarial seal, this twentieth day of June, A. D., 1874.

E. H. May,
Notary Public.
(SEAL)
Edward H. May, Notary Public, Washington, D. C.

The appellant then introduced in evidence a deed dated October 3, 1877, from Charles B. Church, trustee, to Mary F. Ford, the appellant. This deed purports to be a conveyance in fee simple of the lots in controversy for the consideration of

$500, "to have and to hold for her and their sole use, benefit, and behoof, forever." The appellant here rested.

The appellee thereupon offered in evidence the original deed from Herbert Ford and Joseph C. Ford to Charles B. Church, trustee, dated June 2, 1874, and produced by the recorder of deeds from the files of his office. The appellee, over the appellant's objection, was permitted to testify that he never saw this deed until after his father's death, and then saw it on file in the office of the recorder of deeds; that, until his attorney notified him, he had no knowledge of the existence of such a deed. He never signed or acknowledged it. At its date he was able to read and write; he had known Charles B. Church from childhood, but never knew Edward H. May, the notary public.

The appellee offered as witness Charles B. Church, the grantee in the last-mentioned deed, who testified that he was well acquainted with Herbert Ford and the appellant; they were honest people, the appellant being the money maker of the family; he had for years invested her savings; in 1874, he, Church, was largely engaged in real-estate transactions, and associated with his relative, E. Kurtz Johnson, in many business affairs; he knows the property in controversy, but, on account of his advanced age and the long lapse of time, he could not at the time of testifying (about April 13, 1905) recall the particulars of the transaction. Church testified that the deed was in his own handwriting; Edward H. May lived near him, was trusted by him, and as notary public took the acknowledgment of many deeds wherein Church was concerned, and May is now dead; after a careful search for papers, and his papers covering a long period of time were destroyed or lost, he cannot recall the transaction, but was confident he had never paid any money of his own. His best impression was that Herbert Ford came to the witness, Church, saying he, Ford, wanted to sell the property and make a division with his son (the appellee who proffered Church as a witness), and the appellant wanted to buy it, and the money used in the purchase of the property was either money belonging to the appellant in his hands for investment, or money furnished by E. Kurtz Johnson, now deceased. He remembers that the appellant owned

other property, and did not remember why he held the property so long as trustee before conveying it to appellant. Here the appellee rested.

Thereupon the appellant proved by George E. Johnson the handwriting of Edward H. May. The witness stated May died in 1886, and that the signatures of May upon the original deed of June 2, 1874, were genuine.

The appellant herself testified that when she was twenty-one years old, about October, 1859, she married Herbert Ford; she took care of the appellee and sent him to school and paid for his education, and that he could read and write at the time the deed to Church was executed. Her husband was a drinking man, engaged in boating on the Potomac, while she was engaged in business separate and apart from her husband, running several stores and owning and operating a number of huckster wagons, and from her earnings she saved her money and bought various parcels of real estate; when the appellee became of age he insisted that his father sell the property in controversy, and that the appellee be given his share. Finally it was agreed that Church should advance $500 for the property and take title to the property for the appellant until she had repaid the money. After some years she paid Church the purchase money, and she knew that the appellee received one half of that sum and purchased a half dozen suits of clothes and took a trip to Rhode Island, and later, in full confidence that the deed from Church conveyed the property in controversy to her, she built two brick houses and paid for the same out of her own money.

Kate E. Dudley, a witness for the appellant, a teacher, testified that she was the child of Herbert Ford and of the appellant, and a half sister of the appellee, and they both lived with their parents, and in 1874 she often heard the appellee demand that his father sell the property in controversy so that the appellee could get his share, and after the sale to Church witness saw Herbert Ford pay the appellee $250, saying that the money was his part of his mother's estate. This transaction occurred about 1874 at their home in the presence of the family; the appellee had full knowledge of the erection of the brick houses by the appellant on the lots in controversy, and of

the appellant's claim of ownership to that property during those years; and the appellant always collected the rent for the houses. There was evidence that the lots in dispute were worth about $800 or $900, and the brick houses erected by the appellant about $1,100 or $1,200. The verdict was for the appellee.

*Mr. John Raum* and *Mr. George H. Lamar* for the appellant.

*Mr. B. F. Leighton* and *Mr. James F. Bundy* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

We have stated with precision and fullness all of the testimony in this case as it appears from the record, because in our opinion the evidence was legally insufficient to support the verdict for the plaintiff below. The plaintiff's right to recover is grounded upon the claim that his signature to the deed was a forgery, and that the acknowledgment was false and fraudulent, and that the appellee was absolutely ignorant of the execution and acknowledgment and delivery of the deed and ignorant of its existence. From the facts and circumstances of this case, it follows that his father, Herbert Ford, grantor, or the appellee's witness, Charles B. Church, grantee, or both, were guilty of fraud and forgery if the appellee's statement be true. The deed itself at the time of its production at the trial was more than thirty years old, and therefore an ancient document. It proved itself. 1 Greenl. Ev. Wigmore's 16th ed. p. 720.

The appellee offered the original deed in evidence only to attack it, and called the grantee, Charles B. Church, who appears to have been an old man of intelligence and probity. The appellee who proffered the witness, held him out as such, and his good reputation is not disputed. Church proved that the deed or paper writing itself was in his own handwriting, and that the signatures of the notary to the appellee's mark and to the certificate of acknowledgment were genuine, and testified to the good reputation of May, the notary, and that he frequently employed him as notary to acknowledge deeds in

which Church was concerned; and, speaking after the lapse
of thirty-one years, Church, the appellee's witness, gave as his
best impression that Herbert Ford came to Church desiring
to sell the property in controversy so as to make a division with
his son, the appellee, Herbert Ford, saying the appellant wanted
to buy the property, and that the money used was the appel-
lant's money in Church's hands for investment, or money fur-
nished by Mr. Johnson, and, in effect, that he had conveyed
the property finally to the appellant; but he cannot recall why
he held it so long as trustee.

The testimony of the appellant and of the witness Dudley
strongly confirm the statement of Church, the grantee in the
disputed deed. The evidence of these three witnesses greatly
preponderates over the appellee's evidence. He alone testified
in his behalf. He denied the signature and acknowledgment
of the deed and the receipt of the purchase money. The proof
is convincing that when he became of age he demanded his
share of the lots of which his mother died seised, and persuasive
that he received one half of the purchase money in full satis-
faction; and it is not disputed that during twenty-eight years
thereafter he remained silent and continued silent while his
stepmother erected the brick houses and for many years col-
lected the rents from the property in dispute. It is now said
that this is accounted for by the survival of his father, the
tenant by the curtesy. It is true that the witness Dudley said
that after appellee learned that the appellant had purchased
the property he often said that he intended to get the property
back.

We need not discuss the various questions raised by the
assignments of error in this case, nor decide whether or not
the validity of this deed can be thus assailed directly in an action
of ejectment, nor determine whether the act of a justice or no-
tary in taking and certifying the acknowledgment of the deed
is a judicial act or merely ministerial, nor whether such act is
a judicial act when the proper official certifies to the acknowl-
edgment of a deed wherein a married woman joined under the
statute then requiring a privy examination, acknowledgment,
and declaration of a married woman, a statute long in force

here and in most of the States, and ministerial only in other cases; nor what rights the appellant had in her own earnings from her separate business as against her husband.

The evidence in this case presents a single question. The appellee here denied all knowledge of this deed, denied he had executed and acknowledged it. Only one circumstance in evidence tended to corroborate his denial. This deed is signed by his mark, and at its date he could read and write. It is not suggested that Herbert Ford, the other grantor, could read and write, and it may be that May, the notary, assumed that the son could not write, and therefore asked both to sign by making a mark, the names of the two grantors being written. These were colored people, and many such were then illiterate. If the name was written by another hand in the presence of the grantor and at his instance or with his assent, it is his act. The disposing capacity, the act of mind, the essential ingredients of the deed, are his; if he then makes the acknowledgment certified by the notary the deed is his deed. See *Gardner* v. *Gardner,* 5 Cush. 483, 52 Am. Dec. 740; *Northwestern Mut. Ins. Co.* v. *Nelson,* 103 U. S. 544, 547, 26 L. ed. 436, 437; *Young* v. *Duvall,* 109 U. S. 573, 577, 27 L. ed. 1036, 1037, 3 Sup. Ct. Rep. 414; *Frost* v. *Deering,* 21 Me. 159.

For the purposes of this case, we may accept the views stated in Wharton on Evidence, vol. 2, 3d ed. § 1052: "The true view is, that the certificate of acknowledgment is prima facie proof of the facts it contains, if within the officer's range, but is open to rebuttal, between the parties, by proof of gross concurrent mistake or fraud. In favor of purchasers for valuable consideration without notice, it is conclusive as to all matters which it is the duty of the acknowledging officer to certify, if he has jurisdiction. As to all other persons it is open to dispute."

The evidence, to impeach a deed, must be something more than the mere unsupported denial of a grantor. Chief Justice Breese well says: "The unsupported testimony of a party to a deed, that he did not execute it, shall not prevail over the official certificate of the officer taking the acknowledgment. Public policy, the security of titles, the peace of society, de-

mand such a rule and a strict adherence to it." *Kerr* v. *Russell,*
69 Ill. 669, 18 Am. Rep. 634; *Lickmon* v. *Harding,* 65 Ill.
505. The expressions of the Supreme Court, although used
in relation to deeds wherein married women were parties, state
a rule of public policy. In *Northwestern Mut. Ins Co.* v. *Nelson,* 103 U. S. 544, 548, 26 L. ed. 436, 438, the court said:
"When a deed or mortgage, regular in appearance, and bearing
the genuine signature and duly certified acknowledgment of
the grantor or mortgagor, is attacked, the evidence to impeach
it should be clear and convincing."

In the case of *Howland* v. *Blake,* 97 U. S. 624, 24 L. ed. 1027,
the court said: "The burden rests upon the moving party of overcoming the strong presumption arising from the terms of a
written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention
of the parties. A judgment of the court, a deliberate deed or
writing, are of too much solemnity to be brushed away by loose
and inconclusive testimony."

The acknowledgment of a deed can only be impeached for
fraud, and the evidence of fraud must be clear and convincing.
*Russell* v. *Baptist Theological Union,* 73 Ill. 337.

"The mischiefs that would ensue from a different rule could
not well be overstated." *Young* v. *Duvall,* 109 U. S. 573, 577,
27 L. ed. 1036, 1038, 3 Sup. Ct. Rep. 414. See *Hitz* v. *Jenks,*
123 U. S. 297, 31 L. ed. 156, 8 Sup. Ct. Rep. 143.

In Maryland, where parol evidence is admitted in a court
of law to impeach the execution and acknowledgment of a deed
for fraud or forgery (*Davis* v. *Hamblin,* 51 Md. 541), the court
recognizes that great weight must be given to official acts certifying to the validity of deeds, and in *Ramsburg* v. *Campbell,*
55 Md. 231, the court says: "The allegation of the appellant,
Sarah, that she never acknowledged the mortgage before Justice Hemmick or any other justice of the peace, involving, as
it does, a charge of gross misconduct and criminal violation of·
duty on the part of the certifying justice, must be sustained by
strong, disinterested, preponderating evidence. 1 Greenl. Ev.

106. The burden of proof is upon the appellant. The justice of the peace is an officer invested with high ministerial and judicial powers, one of the most important of which is the power to take and certify the acknowledgment of deeds and other instruments, upon the validity of which the titles to all real estate and vast amounts of personal property depend. If the verity of their acts can be impeached by the negative testimony of the parties interested to destroy the deed, the most disastrous consequences might ensue."

And in Missouri, in *Springfield Engine & Thresher Co.* v. *Donovan,* 147 Mo. 633, 49 S. W. 500, it is said: "Moreover, extraneous evidence to overcome the certificate of acknowledgment must be strong and convincing, and must satisfy the mind of the court with reasonable certainty. * * * A bare weight or preponderance of the evidence will not do."

And in Illinois the court held that public policy requires proof full, clear, and convincing to impeach the integrity of the certificate of acknowledgment of a deed. In a case where both grantors swore to the fraud whereby their signatures were obtained, the court held the proof insufficient, saying: "But, as between the immediate parties to the deed, the acknowledgment may be impeached for fraud, collusion, or imposition, but not otherwise; and the evidence, to warrant the cancelation or setting aside of a deed upon the ground that the acknowledgment was obtained through fraud, collusion, or imposition, must, as we have held, 'by its completeness and reliable character, fully and clearly satisfy the court that the certificate is untrue and fraudulent.' *Marston* v. *Brittenham,* 76 Ill. 614. And in *Lickmon* v. *Harding,* 65 Ill. 505, we held, in the absence of proof of fraud and collusion on the part of the officers taking and certifying the acknowledgment of a deed, the officer's certificate, in proper form, must prevail over the unsupported testimony of the party grantor that the same was false and forged." *Fitzgerald* v. *Fitzgerald,* 100 Ill. 388.

And again the same court said: "In taking acknowledgments of deeds, mortgages, and other instruments, an officer acts under the sanction of his official oath, and his certificate of official acts, required by law to be made, ought to be regarded of as

high a grade of evidence as testimony given under oath. The officer acting in this case has since died. Although deprived of the testimony of the officer on the witness stand, there remains the presumption that will always be indulged as to the certainty of an officer's acts done in the capacity in which he is serving. After his death his certificates of official acts must be heard to speak for him; otherwise there would be no security for titles acquired under instruments required by law to be acknowledged before such officers." *Warrick* v. *Hull,* 102 Ill. 283.

In *People use of Munson* v. *Bartels,* 138 Ill. 333, 27 N. E. 1091, relied on by the appellee, while the court says that the cases holding the certificates of acknowledgment to be judicial acts were correctly decided, and that a change of the statute respecting the separate examination of a married woman leads that court to determine that such certificates ordinarily are ministerial acts, the case of *Lickmon* v. *Harding, supra,* is indorsed, "in so far as it holds that the officer's certificate, in the absence of fraud and collusion, will prevail over the unsupported testimony of the grantor that the same was false and forged."

In Ohio, the supreme court describes the precise case now before us on this appeal, saying: "We doubt whether a case can be found where the certificate of the magistrate has been allowed to be impeached, on the ground of fraud, without evidence charging the grantee with notice of the fraud, or the officer taking it with complicity therein." *Baldwin* v. *Snowden,* 11 Ohio St. 212, 78 Am. Dec. 303.

In the case before us the good reputation of May, the notary who certified to the acknowledgment of the deed in this case, was fully proved, and the grantee was produced as a witness by the plaintiff below and testified to the bona fides of the deed and of the whole transaction. There was no evidence whatever suggesting fraud or forgery, except the testimony of the plaintiff below, the appellee here, that he did not sign and acknowledge this deed. The appellee's evidence, therefore, was legally insufficient to sustain a verdict in his favor. The evidence of the grantee in the disputed deed, and of the appellant, and of the witness Dudley, and the corroborating circumstances to

which we have adverted, make a case strongly preponderating
against the plaintiff below, and the appellant properly moved
the court to instruct the jury to render a verdict in her favor.
The court erred when it overruled this motion, and the judg-
ment in this case must be reversed.

We have said it was not necessary here to consider the rights
of the appellant, as a married woman, to her earnings.   Except
when the rights of his creditors are involved, there is no ques-
tion that at the time Herbert Ford, with his son, conveyed the
property in controversy to his wife, the appellant, the husband
could convey to Church, trustee, the lots described in the dis-
puted deed, and that Church, trustee, could convey to Mary F.
Ford, the wife of Herbert Ford, the same property.   The deeds
described in the record, but not set out, appear a sufficient con-
veyance through an intermediary from the husband, Herbert
Ford, to his wife, Mary F. Ford; and, since we conclude that
the same deed was the valid deed of Joseph C. Ford, the appel-
lee, the appellant is seised in fee of the lots in controversy,
and therefore was entitled to ask the court to instruct the jury
to return a verdict for the defendant below.   The evidence was
legally insufficient, and in this case it was insufficient in law
because it was insufficient in fact.   *Metropolitan R. Co.* v.
*Moore,* 121 U. S. 570, 30 L. ed. 1025, 7 Sup. Ct. Rep. 1334.
And again, the Supreme Court said: "It is the settled law
of this court that, when the evidence given at the trial, with all
the inferences which the jury could justifiably draw from it,
is not sufficient to support a verdict for the plaintiff so that
such a verdict, if returned, must be set aside, the court is not
bound to submit the case to the jury, but may direct a verdict
for the defendant." *Schuylkill & D. & R. Improv. Co.* v. *Mun-
son,* 14 Wall. 442, 20 L. ed. 867; *Pleasants* v. *Fant,* 22 Wall.
116, 22 L. ed. 780; *Herbert* v. *Butler,* 97 U. S. 319, 24 L. ed.
958; *Bowditch* v. *Boston,* 101 U. S. 16, 25 L. ed. 980; *Griggs*
v. *Houston,* 104 U. S. 553, 26 L. ed. 840; *Randall* v. *Baltimore
& O. R. Co.* 109 U. S. 478, 27 L. ed. 1003, 3 Sup. Ct. Rep. 322;
*Anderson County* v. *Beal,* 113 U. S. 227, 28 L. ed. 966, 5 Sup.
Ct. Rep. 433; *Baylis* v. *Travellers' Ins. Co.* 113 U. S. 316, 28
L. ed. 989, 5 Sup. Ct. Rep. 494; *District of Columbia* v. *Moul-*

*ton,* 182 U. S. 576, 582, 45 L. ed. 1237, 1241, 21 Sup. Ct. Rep. 840.

It was the duty of the court to grant the instruction that the jury should return a verdict for the defendant.

The judgment below must be reversed with costs, and the cause remanded to the Supreme Court of the District of Columbia for further proceedings not inconsistent with this opinion, and it is so ordered.                                    *Reversed.*