William R. TUCKER, Marion J.
Tucker, Appellants,

v.

Maurice M. MEREDITH, Appellee.

No. 12590.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 20, 1955.

Decided March 15, 1956.

Petition for Rehearing In Banc Denied
April 17, 1956.

**348**

Mr. William S. Thompson, Washington, D. C., with whom Mr. Arthur W. Jackson, Washington, D. C., was on the brief, for appellants.

Mr. Samuel B. Groner, Washington, D. C., for appellee.

Before PRETTYMAN, WILBUR K. MILLER and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellants, William R. Tucker and wife, engaged one Jerome Clarke to build a six-room house on certain lots they had previously bought from him for $1,000. The agreed cost of the house was $8,000. The Tuckers had $2,000 which they paid Clarke on that account, but had somehow to finance the remaining $6,000. Being inexperienced in such matters, they entrusted the financing to Clarke, who represented he could do it more readily than they could. To that end, they agreed to execute to him a first deed of trust note for $6,000 which he could use in borrowing the remainder necessary to complete the proposed construction.

Ostensibly pursuant to this agreement, Clarke presented to the Tuckers a note and deed of trust, which they executed. He led them to believe the note was for $6,000 as agreed, but they later discovered it was for $9,500.[1] The note was dated June 15, 1951, and was to become due December 15, 1951. Construction began and had progressed to the point where the incomplete house was worth $2,500, when some time in September, 1951, Clarke approached Maurice M. Meredith, whom he had not known before, for a loan of $6,000 with which to finish the building, to be secured by a pledge of the Tucker note. Meredith looked at the property, saw that in its unfinished state it was worth less than $6,000, but agreed to make the loan if Clarke would agree in writing to use the proceeds to complete the house and would furnish corporate surety to that effect. Clarke gave such a written agreement and secured it with the bond of Public Service Title Company, of which he was president. Having obtained these instruments, Meredith took Clarke's note for $6,000, dated September 15, 1951, due February 15, 1952, with the Tucker note as collateral, and paid to Clarke the sum of $6,000.

Neither the Tuckers nor Meredith then knew Clarke was a rogue with a record. He used Meredith's money for his own purposes, and did not finish the house, although Tucker importuned him for months to complete the work.

Clarke's note to Meredith was not paid at maturity. Pursuant to its terms, Meredith caused the pledged Tucker note to be sold at public auction April 3, 1952, after newspaper advertising, and purchased it for $50, which, after the pay-

---

1. It was so alleged in the complaint. The Tuckers testified, however, that they signed blank forms which they thought would be completed for $6,000 but which were fraudulently filled in by Clarke for $9,500. We observe from examining the papers that the deed of trust bears a certificate of acknowledgment executed by a notary public dated June 15, 1951, and that the same notary signed a form on the note itself identifying it as the note secured by the deed, and certifying that the note and deed of trust were executed in the notary's presence. The notary's certificate imports verity. The unsupported statements of interested persons that the blanks on the forms were not filled in when the papers were executed will not prevail over the official certificate of the notary public. Ford v. Ford, 1906, 27 App.D.C. 401, 408; Marden v. Hopkins, 1918, 47 App.D.C. 202.

ment of costs, was credited on Clarke's note. The Tuckers were informed of this by Meredith's counsel in a letter dated April 10, 1952, wherein it was suggested that "it seems desirable that we arrange a meeting to discuss possible future action to insure that the interests of all parties concerned are properly protected." A copy was sent to Clarke. Tucker conferred with Meredith's counsel but nothing was accomplished.

August 5, 1952, Meredith sued Clarke and Public Service Title Company in the District Court on the $6,000 note, alleging Clarke's agreement and the title company's bond that the loan would be used to finish the Tucker house, and alleging it was not so used but was converted to their own use. Although defenses were interposed, the court awarded Meredith judgment against Clarke on January 29, 1954, in the sum of $5,993.50, with interest from September 15, 1951. Judgment was also entered against the title company. Civil Action No. 1650–52, Meredith v. Clarke, et al.

Before that judgment was entered, however, since both notes had long since matured and he had realized nothing from either, Meredith caused the trustees named in the deed of trust to advertise for sale on March 12, 1953, the realty covered by the deed of trust. Three days before the sale date, the Tuckers brought this suit against Meredith[2] asking the court to cancel their note and deed of trust and to enjoin the sale of their lots. They set forth the factual background substantially as we have stated it, except that we have supplied some particulars gleaned from uncontradicted evidence. The ground for cancellation alleged was that Clarke had fraudulently induced them to sign a note for $9,500 when they had agreed and intended to execute one for only $6,000; and that to the extent of $6,000 for which they had intended to give the note, the consideration had subsequently failed. Thus their defense against the note in the hands of Meredith was no more than failure of consideration.

They further alleged that Meredith knew the consideration for their trust note had failed, and that "he aided in defeating the construction of the said six room house by turning the said Six Thousand ($6,000.00) Dollars over to the said Jerome Clarke thus giving the said Jerome Clarke the opportunity to dissipate same." They attached as exhibits copies of Clarke's written agreement and the title company's bond that the money borrowed from Meredith would be used for no purpose except to finish building their house, and so affirmatively showed the precautions Meredith took to protect them and himself. The reason for such precautions is obvious: the lots worth $1,000 and the incomplete house worth $2,500 did not make the Tucker note adequate security for the proposed loan of $6,000, unless the proceeds of the loan were used to complete the house; if so used, the Tucker note would become ample collateral to secure Clarke's note to Meredith.

Meredith answered, first, that the complaint failed to state a claim against him upon which relief could be granted and, second, he pleaded facts which, if established as such, showed him to be a holder in due course. By way of counterclaim he prayed judgment against the Tuckers on their note.

After hearing the testimony of Tucker, his wife and Meredith, the District Court held the latter was a holder in due course to the extent of his lien, dismissed the complaint, and gave Meredith judgment for $5,993.50 with interest (the amount of his judgment against Clarke), plus the actual costs of a foreclosure sale and an attorney's fee of $50. On this appeal by the Tuckers, the question is whether the District Court erred in deciding Meredith was a holder in due course of the Tuckers' note to the extent of his lien thereon. For reasons which will appear, we hold the court's decision was correct.

Meredith's attack upon the sufficiency of the complaint probably was not called to the attention of the trial judge. Had

2. Clarke was not sued, but the trustees and others were nominal defendants.

it been, the complaint might well have been dismissed on that ground. The allegations against Meredith were that he knew the consideration for the note to the extent of $6,000 had failed when he accepted the pledge; but it was also inconsistently alleged that he caused the failure of consideration by turning the proceeds over to Clarke, thus giving the latter the opportunity to dissipate the money.[3] It was affirmatively stated in the complaint, as we have seen, that Meredith carefully tried to insure that the proceeds of his loan would go into the construction. It was therefore clear from the complaint that the consideration for $6,000 of the note had not failed when Meredith made his loan, and that it did not fail until Clarke used the money for other purposes in violation of his agreement and did not finish the house. We put aside the infirmity of the complaint, however, because the case was tried on Meredith's defense that he was a holder in due course.

Section 28–407, D.C.Code 1951, provides that:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Such a holder is defined in § 28–402, D.C. Code 1951, as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: First. That it is complete and regular upon its face. Second. That he became the holder of it before it was over due, and without notice that it had been previously dishonored, if such was the fact. Third. That he took it in good faith and for value.

Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The principles of negotiable instruments law embodied in the foregoing statutory provisions are not new. The quoted sections codify what the Supreme Court said more than a century ago in Swift v. Tyson, 1842, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865, and which the Court repeated in Goodman v. Simonds, 1857, 20 How. 343, 364–365, 61 U.S. 343, 15 L.Ed. 934, by saying that " * * * a *bona fide* holder of a negotiable instrument for a valuable consideration, without notice of facts which impeach its validity between the antecedent parties, if he takes it under an endorsement made before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although, as between the antecedent parties, the transaction may be without any legal validity. * * "

The opinion in Goodman v. Simonds says the question was not one of new impression even in 1842 when Mr. Justice Story wrote Swift v. Tyson, supra, and was not so regarded by the Court; " * * on the contrary, it was declared to be a doctrine so long and so well established, *and so essential to the security of negotiable paper*, that it was laid up among the fundamentals of the law, and required no authority or reasoning to be brought out in its support * * *." 20 How. at page 365, 61 U.S. at page 365. Emphasis supplied.

It is, of course, true that the maker of a negotiable instrument may suffer hardship because he is unable to assert against a holder in due course valid defenses he might have against the payee or ˄ny subsequent holder not a holder in due course. The possibility of that consequence should be envisaged

---

3. The following is quoted from the complaint:

"Plaintiffs further allege that not only did the defendant, Maurice M. Meredith know of these circumstances, but he aided in defeating the construction of the said six room house by turning the said Six Thousand ($6,000.00) Dollars over to the said Jerome Clarke thus giving the said Jerome Clarke the opportunity to dissipate same."

by one who executes negotiable paper. It is a consequence he may suffer, however, whether or not he anticipates it; for the law regards the security of negotiable instruments in the hands of holders who took for value before maturity without notice of infirmities or defects as of far greater importance than the preservation of the defenses of those who executed them.

▆ We turn to the question whether the evidence showed the appellee to be a holder in due course. It should be noted at the outset that, when he acquired his lien on the Tucker note through contract with Clarke, he is deemed to have then become a holder for value.[4] The evidence showed the appellee took the note for value before maturity and that it was then complete and regular on its face, and had not been previously dishonored. There was neither pleading nor proof to the contrary.

▆ The only controversy arose from appellants' contention that Meredith is not a holder in due course to the extent of $6,000, because when he took it he knew or should have known the consideration therefor had failed, and so he did not take it in good faith. With respect to this issue, the trial judge made this finding of fact:

> "That the circumstances surrounding the defendant Meredith's acquisition of the Tucker note as collateral for the Clarke note were not such as did, or should have, put him on notice of the infirmities in the Tucker note, and defendant Meredith acquired the Tucker note as collateral before maturity."

The evidence concerning the circumstances and conditions under which the pledge was made in September, 1951, must be examined to ascertain whether the District Court clearly erred in making the findings of fact which were unquestionably a sufficient basis for the court's conclusion that Meredith became

a holder in due course of the Tucker note to the extent of $6,000 for which it was pledged to him by Clarke. Rule 52 of the Federal Rules of Civil Procedure, 28 U. S.C.A., provides that: " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * * "

Meredith testified he took the paper in good faith and there was no evidence tending to show bad faith on his part; moreover, his action in requiring Clarke to agree with surety to use the borrowed money for the purpose for which the Tuckers had executed their note indicated his good faith.

Meredith testified that at the time he took the note he had no notice of any infirmity in it or of any defect in Clarke's title thereto. There was no evidence indicating he had such notice. Indeed there was then no infirmity in the note, for none is alleged except failure of consideration and, as we have seen, the consideration did not fail until later when Clarke misused Meredith's money and did not finish the house. There was no defect in Clarke's title to the extent of $6,000, for to that extent he had not obtained it by fraud; and, instead of negotiating it in breach of faith or in circumstances amounting to a fraud, he negotiated it for the very purpose for which the Tuckers had given it. Cf. § 28–405, D.C.Code 1951, in footnote 5. If it be said that Clarke worked a fraud upon the Tuckers by procuring a note for $9,500 instead of the agreed $6,000, nevertheless he acted fraudulently only as to the excess of $3,500. There was no actual fraud to anyone's loss until Clarke practiced it later upon both Meredith and the Tuckers by converting the borrowed money to his own use.

We need not stop to consider whether under §§ 28–409, 28–405 and 28–406 of the Code,[5] the burden was upon the

---

4. Section 28–204, D.C.Code 1951, provides: "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

5. § 28–409. "Every holder is deemed prima facie to be a holder in due course;

Tuckers to show that Meredith was not a holder in due course, or was upon him to show he was. Wherever the burden lay, the appellee was entitled to prevail under the proof. For Meredith's testimony, which the trial court believed, showed affirmatively that he fully qualified as a holder in due course under the defining statute. The Tuckers proved nothing to the contrary. We conclude, therefore, that the appellee became a holder in due course to the extent of his lien when he accepted the pledge.

■ Appellants complain that Meredith failed to make proper inquiry of Clarke as to what consideration he had given the Tuckers, and of them as to whether they could pay on maturity or knew they had outstanding such a note or deed of trust. He was much more careful than the Tuckers were when they executed the papers. Meredith was under no duty to make the suggested inquiries unless it could be said he acted in bad faith in not making them, Goodman v. Simonds, 1857, 20 How. 343, 367–368, 61 U.S. 343, 15 L.Ed. 934, which does not appear. Appellants say in their brief, "As a business man of experience, appellee is imputed with knowing that there was something definitely irregular about a $9,500.00 First Deed of Trust, of a six-month duration, on a piece of property that in appellee's judgment was not worth $6,000.00." The suggestion is demonstrably unsound. As we have pointed out, the property as then improved was worth $3,500, according to the appellants; and its completion with the $6,000 furnished by Meredith would have

given it such a value that there would have been nothing "definitely irregular" about a $9,500 trust.

■■ The appellants further argue that, even if Meredith became a holder in due course to the extent of his $6,000 lien when he took the Tucker note as collateral, he lost that status April 3, 1952, when he bought their note at the auction sale because it was then past due; that his lien on the instrument, which he had acquired before its maturity, merged in the greater title he obtained by buying the note after its maturity. The theory seems to be that, having purchased the note April 3, 1952, Meredith's status as a holder thereafter depended entirely upon the title he then obtained; and, as he obtained that title after maturity, he was not thereafter a holder in due course to the extent of the $6,000 he had advanced nor to any extent, and that the defense of failure of consideration could be asserted against him.

The argument confuses Meredith's lien on the note with his status as a holder to which it gave rise. If it be conceded for the discussion that the lien merged in the greater title obtained at the sale, it does not follow that Meredith's status as a holder in due course to the extent of $6,000 thereby became an inferior status. Section 28–204 of the Code [6] shows that one may be a holder for value—and of course it is equally true that he may be a holder in due course—of only a part of the principal amount of a promissory note. Since the lien was not discharged by payment, we see no reason to hold that, by purchasing the

but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

§ 28–405. "The title of a person who negotiates an instrument is defective within the meaning hereof when he obtained the instrument, or any signature thereto, by fraud, duress, or force and

fear or other unlawful means, or for any illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud."

§ 28–406. "To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

6. See footnote 4.

note at the sale which served to divest Clarke of any claim thereto but in no way altered the position or liability of the Tuckers, Meredith forfeited his status as a holder in due course to the amount of $6,000. The District Court held that after the sale Meredith continued to be a holder in due course to the extent of his lien debt but was not a holder in due course with respect to the amount by which the principal of the note exceeded Clarke's debt to him.[7]

The District Court's conclusions of law were properly reached upon the basis of factual findings which were amply supported by the evidence, and therefore cannot be disturbed. Consequently the judgment appealed from, which seems to us to be in all respects correct, must be upheld.

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

A holder in due course of a negotiable instrument, under the District of Columbia statute[1] must, among other things, be one who "took it in good faith". The Tucker note for $9,500 was on its face a deed-of-trust note, secured by a piece of property described in it. Clarke's note to Meredith explicitly so described the Tucker note. So Meredith knew the nature of the note he was accepting as collateral. He had inspected the property prior to October 2, 1951. He was an experienced real estate man. He knew the lot was worth only $1,000, that no house was on it, that only the footings for a house were in, and that the lot and the footings together were worth only $3,500. He gave Clarke the $6,000 and so came into possession as a holder of the collateral note on October 4, 1951. Thus, when he acquired this first-trust note of the Tuckers for $9,500, he knew the recited security for that note did not approach in value the face of the note. I think he did not take that collateral note in good faith.

As a matter of fact Meredith himself loaned Clarke money with which to build the house which, in turn, was to be security for the Tucker collateral note. The agreement between Clarke and Meredith specifically provided that the money given Clarke by Meredith would "be used only to pay for labor and materials going into the construction of a house" on this property. Meredith required Clarke to post a bond to secure the loan Meredith was making to Clarke. In other words Meredith loaned Clarke $6,000 to build the house which would have been the security for the Tucker note, but his opinion of the deal was such that he required Clarke to post a corporate surety bond to secure the loan made for that purpose.

Had Meredith, or some holder through him, merely taken this six-month note for $9,500, without investigation, and paid over the $6,000, the situation might have been different. But Meredith did not take this note without investigation. He examined the property. When he did so he obtained knowledge of facts which I think clearly negative his claim of good faith.

In my opinion Meredith was not a holder in due course. I would reverse the judgment.

---

7. The court's conclusions of law in this respect were stated thus:

"1. That the defendant Meredith is a holder in due course of the plaintiffs' note of June 15, 1951, secured as set forth above, to the extent of his lien on the said note as collateral to secure the payment of Clarke's note to him, i. e., the sum of $5,993,50 with interest at the rate of 6% per annum from September 15, 1951.

"2. That defendant Meredith is not a holder in due course of the said note as to Jerome Clarke's interest therein, purchased by Meredith on April 3, 1952, and that plaintiffs' showing of no consideration bars Meredith's recovery on that portion of the note."

1. 31 Stat. 1401 (1901), D.C.Code § 28-402 (1951).