# BELL SILVER AND COPPER MINING COMPANY v. FIRST NATIONAL BANK OF BUTTE.

ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF MONTANA.

No. 154. Argued January 16, 17, 1895. — Decided March 4, 1895.

A provision, in a deed of real estate in trust to secure the payment of a debt, which authorizes the trustee to sell the property at auction on breach of condition, first giving thirty days' notice of the time and place of sale by advertising the same for three successive weeks in a newspaper, is complied with so far as respects notice, by publication of such notice for three successive weeks, the first publication being more than thirty days before the day of sale.

If such notice describes the property to be sold in the language of the mortgage, it is sufficient.

A trust deed in the nature of a mortgage may confer upon the trustee power to sell the premises on default in the payment of the debt secured by the deed, and a sale thereunder, conducted in accordance with the terms of the power in the deed, will pass the granted premises to the purchaser on its consummation by conveyance; and this rule obtains in Montana, notwithstanding the provisions in § 371 of its Revised Statutes.

THE case is stated in the opinion.

*Mr. A. H. Garland,* (with whom was *Mr. W. F. Sanders* on the brief,) for plaintiffs in error and appellants.

*Mr. M. Kirkpatrick,* (with whom was *Mr. William Scallon* and *Mr. W. W. Dixon* on the brief,) for defendants in error and appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

This case is before us on appeal from a judgment of the Supreme Court of the Territory of Montana, affirming a judgment of one of its district courts.

The original action in the district court was ejectment commenced by the plaintiffs in Silver Bow County for the possession of two mining claims situated therein. It was

tried by the court without the intervention of a jury upon certain agreed facts in the nature of a special verdict.

It appears by them that on the twenty-fifth of April, 1882, the defendant, the Bell Silver and Copper Mining Company, a corporation organized under the laws of Montana, was the owner and in possession of the mining ground described in the complaint, the other defendants named being at, the time upon the premises under contract with the company. On that day the defendant company executed and delivered to the grantees therein designated an indenture reciting that it was authorized by the laws of the Territory of Montana, by its articles of incorporation, and by a vote of its trustees, to execute trust mortgages of all its property, real, personal, and mixed, to secure the payment of bonds issued by it, and it was about to issue sixty bonds in the sum of one thousand dollars each to secure a loan of sixty thousand dollars to be made to it ; and declared that in order to secure the payment of the bonds to be thus issued, and interest thereon, it had granted, bargained, sold, and conveyed, and by those presents did grant, bargain, sell, and convey, to Samuel Wells and Theodore H. Tyndale, as trustees, and the survivor of them, their successors in trust and assigns, the property described in the complaint, with all the buildings, privileges, franchises, and appurtenances — this last clause not to be construed so as to prevent the company from selling old materials in the ordinary course of business, to be replaced by new, nor to prevent it from mining, reducing, or selling ore from the mine in the ordinary course of business, meaning and intending thereby to mortgage all the property, real, personal, and mixed, of whatever nature or name, owned by the party of the first part, but upon the following express trusts, that is to say, that in case the Bell Silver and Copper Mining Company should fail to pay the principal or any part thereof which might fall due on the bonds secured thereby, at any time and place when and where the same might become due and payable according to the tenor and effect thereof and for thirty days thereafter, then and in that case, upon the written request of the holders of one-fourth part of the bonds which might at

the time be outstanding and unpaid, it should be the duty of the parties of the second part, their survivors or assigns, to enter upon and take possession of the premises of the party of the first part, their successors in trust and assigns, or they might at their discretion, upon the written request of the holders of one-fourth of the bonds then unpaid, cause the premises and property to be sold at public auction in Butte City, Montana, or in the city of Boston, Massachusetts, as the parties of the second part, their successors or assigns, might deem best, first giving thirty days' notice of the time and place and terms of sale by publishing the same once a week for three weeks successively in one of the principal newspapers for the time being in Boston, Massachusetts, and Butte City, Montana, and upon such sale to execute to the purchaser or purchasers thereof a good and sufficient deed or deeds of conveyance in fee simple for the same which should be a bar against the said Bell Silver and Copper Mining Company, party of the first part, its successors and assigns, and all other persons claiming under it or them, of all right, interest, or claim in and to the premises and property and all parts thereof.

And it was expressly agreed by the indenture in question that the parties of the second part, their successors and assigns, or any persons in their behalf, might purchase at any sale thus made or made by order of the court, under the laws of Montana, and that no other person should be answerable for the application of the purchase money, and that the trustees should, after deducting from the proceeds of such sale the costs and expenses thereof, and of managing the property, and enough to indemnify and save themselves harmless from and against all liability arising from the trust and for their own compensation, apply so much of the proceeds of the premises and property as might be necessary for the payment of the principal and interest of the bonds unpaid, whether matured or not, and restore the residue to the party of the first part, it being expressly understood and agreed that in no case should any claim or advantage be taken of any valuation or appraisement, redemption or extension, by the party of the

first part, its successors or assigns, nor any process be obtained or applied for by it or them to prevent such entry or sale and conveyance.

The agreed statement of facts further showed, aside from other things, that thereafter, on the twenty-fourth day of June, 1885, one Harriet M. Pitman, being then the owner of thirty-five of the bonds mentioned therein, which had been due more than thirty days, wrote to Wells and Tyndale a letter directing them in their discretion to proceed and sell the premises upon the terms described in the instrument, and thereafter, on the fourteenth day of July, 1885, the bonds being past due and unpaid, Samuel Wells and Theodore H. Tyndale prepared and published a notice of sale, the substance of which, as to time, was published in the Boston Traveller and the Butte Miner, papers of general circulation in the cities and vicinities respectively where they were published.

And in pursuance of such notice on September 2, 1885, Wells and Tyndale offered for sale to the highest bidder the property described in the notice, when the same was struck off to the holders of the bonds in the mortgages mentioned for the sum of forty-five thousand dollars, they being then and there the highest and best bidders, and thereafter on the twelfth of October, 1885, Wells and Tyndale made and delivered to the plaintiffs, the purchasers at the sale, a deed of the premises described.

This deed is the source of the title of the plaintiff and the ground upon which their present action rests for recovery.

When the case was pending in the Supreme Court of the Territory it was objected that the deed was void upon several grounds; one, that the notice of sale was not in conformity with the requirements of the contract; second, that the description of the property was insufficient in law; and, third, that the power and authority under which the mortgagees and trustees executed the deed was void under section 371 of the Revised Statutes of Montana. These several objections were considered at length by the Supreme Court of the Territory and held to be untenable.

By the first objection was meant, though not happily ex-

pressed, that the notice of sale was not sufficient in the length of time for which it was given. The instrument provides for "thirty days' notice of the time and place and terms of such sale, by publishing the same once a week for three weeks successively, in one of the principal newspapers for the time being in Boston, Massachusetts, and Butte City, Montana." The notice of sale, in fact, was published on the 15th, 22d, and 29th of July, 1885, in the Boston Traveller, and in the Butte Daily Miner on the 21st of July, and each succeeding day, including the 11th of August, 1885, and the sale took place on the 2d day of the following September. Between the 15th of July, the date of the first publication in the Boston Traveller, and the 2d of September more than thirty days elapsed, and between the 21st of July, the date of the first publication in the Butte Daily Miner, and the 2d day of September was also more than thirty days, and the publication in each paper was once a week for three weeks successively. It is contended that unless the last notice in each of the papers preceded the sale by thirty days it was insufficient. This position was held untenable by the Supreme Court of the Territory, and, we think, correctly. It is sufficient that the notice of sale was published in each of the papers for three weeks, and that the notice preceded the sale thirty days. The first publication was notice, as the Supreme Court of the Territory observed, as much as the second or last. *Leffler* v. *Armstrong*, 4 Iowa, 482, 485. The second objection is sufficiently answered by the fact that the description in the notice of sale is a transcript of that contained in the mortgage, and if it is defective in any respect in the description of the personalty it is sufficient that it is complete in the description of the real property, for the recovery of which the action is brought. The third objection was that the power under which the trustees executed the deed was void under section 371 of the Revised Statutes of Montana. This objection requires further consideration. The statute declares that a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale.

It was taken from a similar statute in the laws of California. It constitutes section 260 of its practice act and has frequently been the subject of construction by its courts.

In *Koch* v. *Briggs*, 14 California, 256, which was a case in which Briggs was indebted to Koch on a promissory note and to secure its payment executed to one Swift, as trustee, a deed of a parcel of real property containing a provision for its sale upon default in the payment of the note and interest, or any part thereof, and that upon application of the holder he should sell the premises at public auction at a designated place in the county to the highest bidder for cash, after fifteen days' previous publication of notice in one of the newspapers of the county of the time and place of sale, and execute to the purchaser a good and sufficient deed of the same, and out of the proceeds, after satisfying the expenses of the advertisement and sale and of the trust generally, pay the principal and interest due upon the note, and render the surplus, if any, to the grantor, or his representatives, and the court held the instrument to be a deed of trust and distinguishable in some features from a mortgage, though executed as security for the debt of the grantor. By the common law a mortgage was a conveyance of a conditional estate, which became absolute upon breach of its condition. The instrument being intended as security for a debt, it became operative as a conveyance if the condition — that is, the payment of the debt — was not complied with.

A court of equity, however, considering that the instrument was intended principally as security, gave to the mortgagor a right to redeem the premises from forfeiture, after a breach of its conditions, that is, after the grantor's failure to pay the debt secured, which constituted the mortgagor's equity of redemption. Many attempts were made at different times by special provisions to lessen and deprive the mortgagor of this right and to treat the instrument as an absolute conveyance.

The object of the provision of the three hundred and seventy-first section of the statute of Montana and of the similar law of California, from which it was taken, was to preclude any arrangement between the mortgagor and the

mortgagee by which the former's right to the property could be cut off without a sale of the same. It therefore. held that the mortgage should not operate as a conveyance, whatever its terms, until a foreclosure and sale. The foreclosure might .be by judicial proceedings in equity or by any other regular proceedings which resulted in extinguishing the mortgagor's right of property by sale. .

In deciding *Koch* v. *Briggs*, (p. 262,) and in distinguishing it from a mortgage in its strict form, the court said : " Where. there is a mortgage there is a right, after condition broken, to a foreclosure on the part of the mortgagee, and a right of a redemption. on the part of the mortgagor. It matters not whether we consider the instrument a conveyance of a conditional estate in the land, as at common law, or as creating a mere lien or encumbrance for the purpose of security, as by our law. The right to foreclose, whether resulting in vesting an absolute title to the property in the mortgagee, as formerly in England, or in a judicial sale of the premises, as in this State, exists in all cases of mortgage, after breach of condition, as does also the right to redeem the property from forfeiture, or from the encumbrance of the lien. These two rights are mutual and reciprocal."

In the case of *Fogarty* v. *Sawyer*,. 17 California, 589, 592, the instrument under which the property conveyed was intended as security and to be sold by the trustees named upon breach of its condition for payment. It was similar in form to the indenture under consideration in this case, and the court said :

" Under the section " (260 of the Practice Act of California referred to) " the mortgage creates a mere lien for the purposes of security, and, as in other cases of lien upon real property, can only be enforced by judicial proceedings, except by the authority of the owner of the property. By virtue of the mortgage alone the mortgagee can neither acquire the possession nor dispose of the premises, but the existence of the mortgage does not prevent. the owner from making an independent contract for the possession, or from authorizing a sale of the premises, the mortgagee consenting thereto, to pay off

the debt.   Nor is it perceived that there is any legal obstacle to making such contract with the mortgagee or to clothing him with the power of sale.   If the owner of the property sees fit to enter into such an arrangement with him, or to confer such power upon him, it would be going a great way for the court, for that reason alone, to invalidate the proceedings. The right to dispose both of the possession and estate follows necessarily from the ownership of the property, and, this being so, no valid objection can be urged against incorporating the contract and power in the same instrument with the mortgage.   They do not become in that way any part of the mortgage, but are as much independent of it as though contained in separate instruments.   Some stress is placed by the respondent upon the use of the words ' whatever its terms' in the statute.   This language is supposed to prohibit separate stipulations between the parties for the possession and for the sale of the premises upon default.   We do not thus construe the language, but, on the contrary, are clear that it was only intended to control the terms of grant, bargain, and sale generally employed in mortgages."

We agree to what is stated by the court in that case. There is nothing in the law of mortgages, nor in the law that covers what are sometimes designated as trust deeds in the nature of mortgages, which prevents the conferring by the grantor or mortgagor in such instrument of the power to sell the premises described therein upon default in payment of the debt secured by it, and if the sale is conducted in accordance with the terms of the power, the title to the premises granted by way of security passes to the purchaser upon its consummation by a conveyance.   *Grant* v. *Burr*, 54 California, 298 ; *Bateman* v. *Burr*, 57 California, 480.

The power of sale in the indenture, whether we call it a deed of trust or a mortgage, does not change its character as an instrument for the security of the indebtedness designated, but it is an additional authority to the grantee or mortgagee, and if he does not choose to foreclose the mortgage by any of the ordinary methods provided by law, he can proceed under the power added for the sale of the prop-

erty, to obtain payment of the indebtedness. The insertion of a power of sale does not affect the mortgagor's right to redeem so long as the power remains unexecuted and the mortgage is not, as it may be, foreclosed in the ordinary manner, but when a sale is made of the interest of the mortgagor, his right is wholly divested, embracing his equity of redemption.

Mr. Jones, in his careful treatise on Mortgages, observes that "the delay and expense incident to a foreclosure and sale in equity have brought power of sale mortgages and trust deeds into general favor both in England and America, and although their general use is now confined to a part only of our States, the same influences which have already led to their partial adoption and use are likely to lead to their general use everywhere at an early day. . . . A power of sale, whether vested in the creditor himself or in a trustee, affords a prompt and effectual security."

The sale made by the trustees in the case under consideration complied in all essential particulars with the conditions contained in the deed of trust or mortgage, whichever it may be called, and the deed executed by the trustees passed to the purchasers a good title to the premises covered by the indenture.　　　　　　　　　　　　　*Judgment affirmed.*