John Henry YOUNG and Emma D. Young, Plaintiffs,

v.

Peter S. RIDLEY, Recorder of Deeds, Walter E. Washington, Commissioner of the District of Columbia, Richard Sugarman, Trustee, William B. Carter, UAC, t/a All-State Mortgage Co., Albert Dubin, Alvin Garfinkle, Alvin Steinberg, t/a Capital Syndicate, Alpert Realty, Hymen Alpert and Patricia Pitts, Defendants.

Civ. A. No. 387–70.

United States District Court, District of Columbia.

March 11, 1970.

John M. Roney, Maribeth Halloran, Neighborhood Legal Services Program, Washington, D. C., for plaintiffs.

## MEMORANDUM—ORDER

GASCH, District Judge.

The question before the Court is whether a three-judge court must be convened. Plaintiffs in this case seek a declaratory judgment that the procedure for extrajudicial foreclosure "authorized" by Title 45, Sections 301, 603 and 615 of the District of Columbia Code is unconstitutional because it deprives homeowners of property without due process of law. In addition, they have moved for a preliminary injunction to restrain the defendants from proceeding with completion of a foreclosure sale under a deed executed by plaintiffs pending full hearing on their complaint, and have made application for convening of a three-judge court pursuant to 28 U.S. C. § 2282.

■■ Section 2282, Title 28, U.S.C., provides that an injunction restraining the enforcement of any Act of Congress "shall not be granted * * * unless the application therefor is heard and determined by a district court of three judges * * *."[1] However, Section 2282 does not apply if the question of constitutionality raised is not "substantial." A claim may lack substantiality "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S. Ct. 865, 867, 82 L.Ed. 1323 (1938). For the reasons stated below, I have concluded that plaintiffs' constitutional claim is not substantial.

### The Statutory Scheme

Sections, 603 and 615 of Title 45, D. C.Code, set forth in the margin,[2] au-

---

1. The Supreme Court has only recently made clear that Acts of Congress pertaining solely to the District of Columbia, such as the statutes challenged here, are "Acts of Congress" within the meaning of Section 2282. Shapiro v. Thompson, 394 U.S. 618, 625 n. 4, 89 S.Ct. 1322, 22 L.Ed. 600 (1969).

2. Title 45, Section 301 authorizes the use of clauses granting power to sell secured real property at public auction in mortgages, deeds of trust, and other contracts conveying title to realty.

Title 45, Section 603, provides:
The legal estate conveyed to a mortgagee, his heirs and assigns, or to a trustee to secure a debt, his heirs and assigns, shall be construed and held to be a qualified fee simple, determinable upon the release of the mortgage or deed of trust, as hereinafter provided, or the appointment of a new trustee by agreement of the parties pursuant to section 45–614(b) or by judicial decree for the causes hereinafter mentioned: *Provided*, That nothing in this section contained shall prevent the passing of

thorize persons holding power of sale under mortgages, deeds of trust and other contracts conveying title to realty, to foreclose and sell the property by public auction without a hearing for the homeowner prior to the sale. However, Section 615(b) provides that no such foreclosure sale may take place unless the holder of the note secured by the mortgage

(1) at least 30 days in advance of the date of the sale gives written notice of the sale by certified mail, return receipt requested, and in such form as the District of Columbia Council by regulation prescribes, to the owner of the property at his last known address; and

(2) sends a copy of the notice to the Commissioner of the District of Columbia, or his designated agent.

Moreover, extrajudicial foreclosure is permissible only when the instrument contains a power of sale clause which expressly grants to the mortgagee or trustees the power to sell the property at a public auction if the owner should default in his payments. The power of

sale may prescribe the terms of the sale and provide for notice to the grantor. However, any provision for notice is *in addition* to the 30-day notice required by Section 615(b).

Prior to 1968, foreclosure procedures in the District of Columbia had been characterized as the least cumbersome of any jurisdiction.[3] There was no statutory requirement that the owner be notified of an extrajudicial foreclosure sale and, therefore, there was no guarantee that a homeowner would have sufficient time before the sale to take legal action to protect himself. Homeowners—particularly low-income homeowners—who had been fraudulently tricked into giving second and third mortgages on their homes by a small number of unscrupulous merchants found that their homes were literally being · sold from beneath them in foreclosure proceedings because the instruments they had signed contained power of sale clauses.

In order to correct this abuse, Congress in 1968 enacted the present Section 615(b).[4] It was believed that the statutory requirement of notification to the owner and to the District of Colum-

---

an *absolute and unqualified estate in fee-simple* under a deed made by the mortgagee, trustee, or new trustee in pursuance of the powers conferred by the mortgage or deed of trust.

Title 45, Section 615, provides:

(a) If the length of notice and terms of sale are not prescribed by the mortgage or deed of trust, or be not left therein to the judgment or discretion of the mortgagee or trustee, any person interested in such sale may apply to the court, before such sale is advertised, to fix the terms of sale and determine what notice of sale shall be given.

(b) No foreclosure sale under a power of sale provision contained in any deed of trust, mortgage or other security instrument, may take place unless the holder of the note secured by such deed of trust, mortgage, or security instrument, or its agent, gives written notice, by certified mail return receipt requested, of said sale to the owner of the real property encumbered by said deed of trust, mortgage or security instrument at his last known address, with a copy of said notice being sent to the Commissioner of the Dis-

trict of Columbia, or his designated agent, at least 30 days in advance of the date of said sale. Said notice shall be in such format and contain such information as the District of Columbia Council shall by regulation prescribe. The 30-day period shall commence to run on the date of receipt of such notice by the Commissioner. The Commissioner or his agent shall give written acknowledgment to the holder of said note, or its agent, on the day that he receives such notice, that such notice has been received, indicating therein the date of receipt of such notice. The notice required by this subsection (b) in regard to said mortgages and deeds of trust shall be in addition to the notice described by subsection (a) of this section.

3. 18 D.C.Code Encyclopedia § 45–603, at 679–80 (1968).

4. D.C.Code § 45–615(b) (Supp. II 1969). *See* 114 Cong.Rec. S8960 (daily ed. July 19, 1968) (remarks of Sen. Tydings) ; 114 Cong.Rec. H9333 (daily ed. October 1, 1968) (remarks of Rep. Dowdy).

bia government would protect the homeowner against "automatic foreclosure" in two ways. First, the 30-day notice requirement would give the homeowner ample time to seek remedies, such as emergency injunctive relief in this Court, under existing law.[5] Second, and perhaps more important, the drafters of the bill envisioned that the D. C. Government upon receipt of its notice, would investigate the proposed foreclosure to protect against the abuses which the bill was designed to obviate. If there was evidence of such abuse, the 30-day period would permit the government representative to consult with the owner and counsel him as to the impending foreclosure sale.[6]

The Senate District of Columbia Committee considered but decided against enactment of a more stringent provision which would have in *every* case required the party seeking foreclosure to secure a court order before foreclosure could be made. The Committee felt that the delay which would inevitably result from a hearing and other procedural steps would unduly restrict legitimate financial institutions in transacting their business, and that a court foreclosure proceeding might restrict the flow of mortgage money into the District of Columbia. The notification requirement ultimately enacted, Congress concluded, would adequately protect the property owner.[7]

### The Constitutional Question

Essentially, plaintiffs assert that the challenged sections of the D.C.Code violate the Fifth Amendment because they permit foreclosure without first providing an opportunity for a hearing. They place principal reliance on the Supreme Court's decision last term in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), holding violative of the due process clause of the Fourteenth Amendment a Wisconsin statute which permitted a creditor to garnish the wages of his debtor without a hearing on the merits of his claim against the wage-earner.

The statute found defective in *Sniadach* permitted the creditor to freeze his debtor's wages, except for a small statutory immunity, merely by serving a summons on the debtor's employer. The creditor then had to serve the summons and complaint on the debtor within ten days after service was made on the employer. Thereafter, the employer was required to hold the designated portion of the debtor's wages until the hearing on the merits of the debt. If the wage-earner won on the merits in the suit on the debt, the wages were unfrozen. However, in the interim he was deprived of the use of his wages without any opportunity to be heard and to present any defense he may have had. In finding that even this temporary deprivation of the debtor's wages amounted to a taking of property within the meaning of the due process clause,[8] the Court emphasized that wages are "a specialized type of property presenting distinct problems in our economic system,"[9] and that there was no interest of the state or the creditor which warranted protection through curtailment of the debtor's due process rights. Accordingly, absent special circumstances, prejudgment wage garnishment of the type authorized by the Wisconsin statute can be imposed only after a judicial hearing.

Preliminary comparison of the statutory scheme at issue in *Sniadach* with

---

5. 114 Cong.Rec. S8960 (daily ed. July 19, 1968).

6. *Id.*

7. *Id.*

8. 395 U.S. at 340, 89 S.Ct. 1820.

9. 395 U.S. at 340–342, 89 S.Ct. at 1822. The Court placed particular emphasis on the leverage which prejudgment attachment gives a creditor of a wage earner who depends upon his wages to support himself and his family. Thus, the debtor frequently is under considerable pressure to give into the demands of debt collectors in order simply to get his wages back. Moreover, the statutory exemption granted the wage earner is "generally insufficient to support the debtor for any one week." 395 U.S. at 341, 89 S.Ct. at 1822.

the D.C. summary foreclosure procedure manifests a fundamental difference between the two: extrajudicial foreclosure may not be had in the District of Columbia unless the mortgage or deed of trust contains a clause giving the grantee a power of sale over the property in the event of the owner's default, whereas under the Wisconsin statute, authorization by the wage earner was not a prerequisite to garnishment by his creditor. Hence, summary foreclosure can proceed only when the property owner has agreed to it beforehand.[10] The statute's implicit premise is that an owner who has willingly given a power of sale has waived judicial foreclosure, and indeed will not be without notice of foreclosure, for he knows that his own act of nonpayment will trigger the foreclosure mechanism.

The importance of the bargain concept to the validity of summary foreclosure has been voiced by the Supreme Court in several cases not dealt with in plaintiffs' memoranda. Indeed, the Supreme Court has expressly approved statutes such as those challenged here. In Bell Silver & Copper Mining Co. v. First Nat. Bank of Butte, 156 U.S. 470, 477, 15 S.Ct. 440, 443, 39 L.Ed. 497 (1895), the Court said:

> There is nothing in the law of mortgages, nor in the law that covers what are sometimes designated as "trust deeds in the nature of mortgages," which prevents the conferring by the grantor or mortgagor in such instrument of the power to sell the premises described therein upon default in payment of the debt secured by it, and, if the sale is conducted in accordance with the terms of the power, the title to the premises granted by way of security passes to the purchaser upon its consummation by a conveyance.

And in Scott v. Paisley, 271 U.S. 632, 46 S.Ct. 591, 70 L.Ed. 1123 (1926), the Court expressly approved *Bell Mining* and stated that the constitutional validity of contractual powers of sale is "un-questionable." 271 U.S. at 635, 46 S.Ct. 591. Furthermore, statutory schemes similar to the District of Columbia's have recently been sustained in the face of due process attacks in state courts. See Roos v. Belcher, 79 Idaho 473, 321 P.2d 210 (1958); Great Falls Nat'l Bank v. McCormick, 448 P.2d 991 (Mont.1968).

The Court is not persuaded that the Supreme Court in *Sniadach* intended to question these previous opinions approving contractual powers of sale. Indeed, it has been suggested that the practical effect of *Sniadach* will probably be minimal, since creditors will henceforth probably require debtors to execute promissory notes containing wage assignments contingent on default in repayment. It is suggested that the Supreme Court "would in all probability decline to void" a state statute permitting this practice.[11]

In addition to containing the differentiating element of a bargained-for procedure, the summary foreclosure procedure in the District of Columbia differs from the Wisconsin prejudgment garnishment statute in the manner in which it affects the debtor's property. In *Sniadach*, the "taking" consisted of the temporary freezing of the debtor's wages pending a determination of the merits of the creditor's claim, even though legal title to the wages might never pass to the creditor. Here, on the other hand, plaintiffs' property will not be "taken" until a deed to the property is conveyed to the purchaser at the foreclosure sale. Mere institution of the foreclosure mechanism in no way affects a debtor's use of his property.

Moreover, even though an owner has contractually waived his right to a court order authorizing sale of his property, he is not deprived of all opportunity for a hearing before that time. During the 30-day statutory notice period a homeowner with a valid defense to foreclosure has adequate time, as the Senate

---

10. There may, of course, be substantial question as to the reality of the agreement in particular cases. See page 1313, *infra.*

11. Note, Wage Garnishment Before Hearing, 83 Harv.L.Rev. 113, 117–18 (1969).

Committee contemplated, to obtain legal advice and secure injunctive relief in this Court pending determination of the merits of his defense.[12]

It is of course true that in many instances, particularly where the debtor is of lesser economic means, inequality of bargaining power between the parties may render illusory the statute's premise that summary foreclosure is a bargained-for element of the total loan arrangement. Indeed, plaintiffs have included in their complaint many allegations which, if proved, would refute any claim that they even in fact agreed to mortgage their property. Nonetheless, considerations such as this run not to the validity of the statute, but rather to the reality of the agreement which calls the statute into effect. A contrary decision would cast doubt on the validity of many provisions normally contained in commercial instruments which traditionally have been thought properly subject to the contractual agreement of the parties.[13] However, whether the validity of an agreement to waive judicial foreclosure, i.e., to grant a power of sale, should be tested by more stringent principles than those of general contract law remains for decision. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Perhaps summary foreclosure pursuant to power of sale is overly harsh and ought not to be allowed despite the fact that Congress only recently rejected the statutory scheme for which plaintiffs apparently contend. However, it is not the function of the Court to second-guess the wisdom of congressional enactments once it is satisfied that the requirements of due process of law have been met.[14]

The application of plaintiffs for the convening of a three-judge court is denied.

So ordered.

12. The right to an injunction is not, of course, absolute. Indeed, the holder in due course doctrine may well impose an insurmountable obstacle to such relief in many cases. See Kent v. Livingstone, 65 U.S.App.D.C. 291, 83 F.2d 316 (1936); Tucker v. Meredith, 98 U.S.App.D.C. 90, 232 F.2d 347 (1956). However, the Court does not feel that legislative sanction of the holder in due course doctrine, resting as it does on policy considerations within the province of Congress, requires invalidation of the statutes challenged here notwithstanding the occasional hardship it may visit upon the homeowner who has given a power of sale.

Even if the owner fails to seek injunctive relief he may not be disturbed in his actual possession of his home until an action for possession is instituted against him in the Court of General Sessions by the purchaser at the foreclosure sale. Although after the sale has been completed the owner's rights may be greatly diminished, by filing a plea of title as a defense to the action for possession he may have the cause certified to this Court for a hearing on the question of who has "title." Moreover, the Court of Appeals has only recently assured that ability to certify questions of title to this Court shall not depend upon a litigant's economic posture. Thompson v. Mazo, D.C.Cir., 421 F.2d 1156 (January 28, 1970).

13. For example, confession of judgment clauses and acceleration clauses often found in negotiable instruments.

The statutory system here challenged is in several respects analogous to statutes authorizing summary entry of judgment pursuant to confession of judgment clauses contained in promissory notes. Although this procedure has fallen into disfavor and remains in only a few states, see Note, Confessions of Judgment, 102 U.Pa.L.Rev. 524 (1954), its validity is unquestioned. Bower v. Casanave, 44 F. Supp. 501, 507 (S.D.N.Y.1941). See text accompanying note 11, supra. Just as these state legislatures have considered confession of judgment clauses important to the promotion of commerce in their states, Congress could properly determine that considerations of economic policy for the District of Columbia justify permitting lenders the added security of summary foreclosure when the debtor has authorized that procedure in advance.

14. "It is contended that this is a harsh statute. * * * But * * * relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed."
Nelson v. City of New York, 352 U.S. 103, 110–111, 77 S.Ct. 195, 199, 1 L.Ed. 2d 171 (1956).