**Dorcas BOND and Barbara Baldwin, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**William H. DENTZER, individually and as Superintendent of the Banking Department of the State of New York, Beneficial Finance Company of New York, Inc., and Protective Loan Corporation, Defendants.**

**No. 70-CV-365.**

United States District Court, N. D. New York.

April 16, 1971.

Lawrence F. Klepper, Chief Counsel, Legal Aid Society of Albany, Inc., Albany, N. Y., for plaintiffs; Joel F. Spitzer, Albany, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen., Albany, N. Y., for defendant William H. Dentzer, Superintendent of the Banking Dept. of the State of N. Y.; John Q. Driscoll, Albany, N. Y., of counsel.

DeGraff, Foy, Conway & Holt-Harris, Albany, N. Y., for defendant Beneficial Finance Co. of N. Y., Inc.; John T. DeGraff, Thomas F. Conneally, Jr., Harvey M. Lifset, Ralph D. Semerad, Albany, N. Y., William H. Allen, Washington, D. C., of counsel.

Harvey M. Lifset, Albany, N. Y., for defendant Protective Loan Corp.

JAMES T. FOLEY, Chief Judge.

### MEMORANDUM-DECISION and ORDER

The two lady plaintiffs for themselves and on behalf of alleged class members, similarly wronged it is claimed, seek injunctive and declaratory relief and the composition of a three-judge court. (28 U.S.C. §§ 2281–2284). The claims are always ones of serious nature in that they assert Article 3–A of the Personal Property Law, McKinney's Consol. Laws, c. 41, and Article 9 of the Banking Law, McKinney's Consol.Laws, c. 2, of New York State are unconstitutional on their face and as applied. Such laws are stated in the substantial complaint in paragraph VIII, Claims for Relief, to be unconstitutional "insofar as they provide for execution against wages by service of wage assignment on employers without actual notice to the assignor (wage earner) and opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution"; and further that such laws are unconstitutional in like manner "insofar as they fail to exempt from wage assignment the first $85.00 of weekly income in violation of the Equal Protection Clause of the Fourteenth Amendment." Jurisdiction is based expressly by what has become a familiar recitation upon 42 U.S. C. § 1983, 28 U.S.C. §§ 1343(3), (4), 2281 and 2284. Sections 2201 and 2202, Title 28, are invoked apparently for jurisdiction but such deal with declaratory judgment and possess no jurisdictional conferral as such.

The usual flurry of motions came on the scene inevitable it seems in this type action. Their filing takes a federal District Judge away from many pressing problems into immediate research and study of a ponderous and complex field of law even for the preliminary decisions. It should be appreciated that lawsuits of this kind engender treatment of issues highly important to the federal-state relationship and should not be filed with casualness in the federal courts. Judge Henry Friendly of the Court of Appeals, Second Circuit, dramatized the plight of the District Judge when confronted by such unexpected constitutional challenges to state action and statutes in Negron v. Wallace, 2 Cir. 1971, 436 F.2d 1139, Judge Friendly commenced by the statement that the Court of Appeals, Second Circuit, yields to none in recognizing the high place in our legal system held by 42 U.S.C. § 1983 and its jurisdictional implementation, 28 U.S.C. § 1343(3). This District Court also takes no backseat to the entertainment and processing of civil rights actions when they contain issues proper for such federal treatment. This District Court receives and has received for a number of years a steady flow of civil rights complaints from more than 6,000 state prisoners confined within this District. (See Wright v. McMann, 2 Cir., (1967) 387 F.2d 519; (NDNY) 321 F.Supp. 127.) It is only in the past year or two that the Court began to be confronted by filings of such actions as this one by legal aid, neighborhood services and civil rights organizations. (LaPrease v. Raymours Furniture Com-

pany (NDNY) 315 F.Supp. 716; Boddie v. Wyman, 2 Cir., 434 F.2d 1207; see also Cook v. Board of Education, 2 Cir., 424 F.2d 995).

The application here for a temporary restraining order that often unfortunately calls for instant and hurried decision was unnecessary to decide inasmuch as the attorneys for the two finance companies which held the wage assignments of such named plaintiffs as security for their small loans made to them by Beneficial and Protective agreed in open court to lift and not further execute upon such written individual wage assignments pending resolution of the other questions before the Court. The application for the composition of a three-judge court and for authorization for the action to proceed as a class action pursuant to specified provisions of Rule 23 of the Federal Rules of Civil Procedure remain for decision. The position of plaintiffs in such respects has been met by vigorous briefing for the corporate defendants with opposition in depth that not only disputes the essentials for three-judge court jurisdiction being present but contends further there is not sufficient federal question of substance presented by the complaint to uphold federal single judge jurisdiction.

Whether the single judge should act alone, or make the request that is easy to do to the Chief Judge of the Circuit for the statutory three-judge court has been the subject of continuous and extensive writing at every level of the Federal Courts. (See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194; Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794; Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442; Utica Mutual Ins. Co. v. Vincent, 2 Cir., 375 F.2d 129; Bynum v. Conn. Commission on Forfeited Rights, 2 Cir., 410 F.2d 173; McMillan v. Board of Education, 2 Cir., 430 F.2d 1145; Astro Cinema Corp. v. Mackell, 2 Cir., 422 F.2d 293; Green v. Board of Elections, 2 Cir., 380 F.2d 445; Rosado v. Wyman, 2 Cir. 1970, 437 F.2d 619; Latham v. Tynan, 2 Cir., 435 F.2d 1248; Dale v. Hahn, etc., 2 Cir. 1971, 440 F.2d 633; Hall v. Garson, 5 Cir., 430 F.2d 430). On the latest go-around in Rosado, supra, December 21, 1970, Judge Feinberg stated that the prior proceedings were complex due in part to the subtle oddities of three-judge court jurisdiction. It must be accepted, of course, that nice distinctions are to be expected in the law, (Galveston, H. & S. A. R. Co. v. Texas, 210 U.S. 217, 225, 28 S.Ct. 638, 52 L.Ed. 1031 (Holmes, J.), and to expect a tidy formula even though it may satisfy the longing for certainty would ignore the movement of a free society. (Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (Frankfurter, J.). The questions here first, whether to request convention of three judges or not, to ascertain the power of the single judge to dismiss if there is no federal substance, and the extent to which the single judge can enter into the merits or factual situation in the resolution of these questions, are substantial and close as evidenced by the great diversity of judicial viewpoints in the above listed cases.

There is a mix of problems at this initial stage, invariably involved in suits of this kind, that would be difficult for court determination if presented singly. The difficulty of decision regarding the convocation of three judges is compounded when the search for the required substantiality necessitates interpretation of concepts of law described as elusive, incapable of precise and rigid definition for all purposes, and ones that mean entry into a murky and uncertain area of the law. Due Process and Equal Protection necessarily are of this nature, and even the superabundance of writing has yet to provide any yardstick for the differing factual situations. Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307; Cafeteria and Restaurant Workers Union Local 473, A.F.L.-C. I.O. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230; LaPrease v. Raymours Furniture Company, supra, 315 F.Supp. at p. 724. It is hard at

times for the single judge at the outset to know how far he can penetrate into areas that by intricate reasoning of the federal Courts may be a function reserved to the statutory three-judge court.

Abstention is strongly urged by the defendants here and there may be in my judgment a solid basis for its application at the appropriate stage. However, it is clear from the decision of the Court of Appeals, Second Circuit, in the Idlewild Bon Voyage case, affirmed in the Supreme Court, supra, that the decision to abstain is a different question from the preliminary one of determining whether the case embodies a substantial federal question, and if there is enough substance for three-judge assembly, the decision to abstain is only to be made by a three-judge district court. (Idlewild Bon Voyage Liquor Corp. v. Rohan, 289 F.2d 426, 429; see also Moreno v. Henckel, 5 Cir., 431 F.2d 1299). I would think that this convolution that confronts the single district judge in the beginning is a major reason why the Judicial Conference of the United States at its October 1970 Session approved draft legislation and authorized its transmittal to the Congress to amend Sections 2281 and 2282, Tit. 28 U.S.C., to eliminate the three-judge district court requirement. (Rept. of Proceedings of Judicial Conf. of U.S., October 29–30, 1970, Session, p. 78; see also Latham v. Tynan, supra, 435 F.2d at p. 1252).

There are a number of federal court opinions, many recently from the Court of Appeals, Second Circuit, that in my judgment indicate a growing resistance, and even resentment, to the institution of these actions with their accompanying burdens almost exclusively in the federal courts. This deliberate by-pass of state courts and administrative tribunals or agencies is unexplainable to many responsible lawyers as well as the citizenry inasmuch as the issues arise basically from the wording and purposes of State laws. Courts in difficulty will stretch to divert or abstain when valid

and new distinctions can be found to limit the open door policy of unrestricted entry if the choice be made continuously to file in the federal court system when competent and clearly available judicial remedy is present unquestionably in the state court system. (Negron v. Wallace et al., supra; Alberda v. Noell (D.C.E.Mich.1971) 322 F.Supp. 1379; Tichon v. Harder et al., 2 Cir. 1971, 438 F.2d 1396; Farrell v. Joel et al., 2 Cir. 1971, 437 F.2d 160, (Ch. J. Lumbard, concurring); see also Wisconsin v. Constantineau, 1971, 400 U.S. 433, 91 S. Ct. 507, 27 L.Ed.2d 515 (Ch. J. Burger, dissenting); Askew et al. v. Hargrave et al., 1971, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196, referring for principles on proper exercise of abstention to Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68). Every federal judge is aware there are forceful Supreme Court writings that dependent on the circumstances the federal remedy is supplementary to the state one and the state one need not be invoked and refused before the federal one is invoked. (Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492; McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622; Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444). Justice Black just as forcefully points out that from the beginning this country has had essentially two separate legal systems that proceed independently of the other, both with ultimate review in the United States Supreme Court of federal questions raised in either system. (Atlantic C.L.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234; see also Younger v. Harris, 1971, 401 U.S. 37, at p. 43, 91 S.Ct. 746, at p. 750, 27 L. Ed.2d 669).

There is no basis for concern that State court rulings on federal constitutional questions might be shunted off unfairly into limbo and prevented from presentation for review in the Supreme Court of the Land. Our system of justice guarantees such right no matter the court of initial filing or its status in the

court systems. (See Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654). In fact, and it is especially noteworthy, inasmuch as the plaintiffs place their greatest reliance upon it to prevail on the merits of this suit, that Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, that struck down the Wisconsin garnishment statute came to the Supreme Court through the State courts of Wisconsin. Justice Black, dissenting, described the opinion of the Supreme Court of Wisconsin in that case as an outstanding one on constitutional law. The courts of New York, in my experience as a New York lawyer and federal judge sitting in New York, are manned by qualified judges with the same capacity to construe federal constitutional questions as the federal judges possess who sit in New York. State judges have the same responsibility to uphold the federal constitution. Both come from the same melting pot with a background of educational training for the law and duly admitted to practice law in New York by the New York courts.

The Court of Appeals, New York, has been historically recognized as one always in the vanguard of distinguished and competent appellate courts of the Nation. It has been involved in countless decisions of substantial federal constitutional questions as the highest court of one of the most populous and industrialized states of the Union with immense commercial, financial and agricultural activity. It has passed upon since our early days, with a distinguished record of accomplishment, complex federal constitutional issues that later were subject to serious consideration and extensive opinions in the United States Supreme Court and affected in many instances the mainstream of American life. State courts throughout the nation should be given their just due and not demeaned by irresponsible assertion that federal constitutional interpretation and application is beyond their ken.

Whitney North Seymour in writing the "Cover Story" for the American Bar Association Journal, March 1971 issue, in regard to the cover photograph of The Court of Appeals Hall in Albany, New York, described the Court in this complimentary fashion:

"At the apex of a court structure which deals with all sorts of questions, the New York Court of Appeals over the years has provided leadership in the development of the law to meet the needs of a changing society. Federal and other state courts frequently cite its decisions. This may be attributed in large part to a succession of strong judges of recognized stature."

The threshold question of prime importance is raised by the motion for a three-judge court composition. Such decision enters a troubled and confused area wherein a reasonable degree of certainty in the interests of the proper and efficient administration of justice is difficult to find. (See Dale v. Hahn, supra; Hall v. Garson, supra; Latham v. Tynan, supra, 435 F.2d 1248, in which Judge Friendly dissenting believes there is enough substance for convening under California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Bynum v. Conn. Commission on Forfeited Rights, supra; McMillan v. Board of Education, supra; Astro Cinema Corp. v. Mackell, supra; Johnson v. Harder, 2 Cir. 1971, 438 F.2d 7.) There are startling examples that indicate the uncertainty leads often at times to a long road through the federal judicial system that may make very questionable the "short-cut" advantage discussed by the Chief Justice in his dissent in Constantineau, supra, sought to be attained when the federal three-judge statutory procedure is invoked under 28 U.S.C. § 2281. E. g. Swift & Co. v. Wickham, supra; Idlewild Bon Voyage Liquor Corp. v. Epstein, supra; Rosado v. Wyman, supra; see also Klim v. Jones (ND Cal.) 315 F.Supp. 109, 112, three-judge court convened, then dissolved, and determination of California Innkeeper's Lien Law proceeded to determination "as a regularly-constituted one-judge district court."

There is certainty in some respect regarding at least the approach to the convening problem in several writings of the Court of Appeals, Second Circuit, which rulings under our system I am bound to follow. There is the continous caution that the single judge in the position I am now in should make conscientious appraisal before requesting the convening of the admittedly burdensome three-judge court, even to the extent of risking reversal in the situations where the alleged federal substantial claim may be questionable or the statutory requirements not strictly met. (Kramer v. Union Free School District No. 15, 2 Cir., 379 F.2d 491, 495; Bynum v. Conn. Commission on Forfeited Rights, supra, 410 F.2d p. 177; Green v. Bd. of Elections, 2 Cir., 380 F.2d 445). In Heaney v. Allen, 2 Cir., 425 F.2d 869 the Court of Appeals, Second Circuit, declared it would not be finical on the lack of merit and substance question and expressly rejected the view of the Court of Appeals, Fifth Circuit, Jackson v. Choate, 404 F.2d 910, 913, that except in open and shut cases it is the better course to forego the doubts, constitute a three-judge court and let the three judges decide the propriety of its constitution. (See also Lewis v. Rockefeller, 2 Cir., 431 F.2d 368, 370–371.)

■ Under this approach, it is my considered judgment that there is a fundamental requisite lacking that compels the denial of the motion by plaintiffs for the statutory three-judge court. The legislative history and purpose of 42 U.S.C. § 1983, the statute from which this action must obtain its basic support, was reviewed again in several extensive writings by the United States Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); and Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142, with reference to pertinent and important previous decisions of the Court since its enactment as Section 1 of the Ku Klux Klan Act of April 20, 1871, 17 Stat. 13. A law of this ancient vintage is bound to create problems in the judicial application to the problems of our complex civilization in the 1970s. (See Monroe v. Pape, supra, Justice Frankfurter dissenting, p. 244).

The phrase "under color of" in 1983 receives minute consideration in Monroe and Adickes. Under those writings it is a major phrase for consideration here in view of my decision to deny the motion for a three-judge court. First, considering the terms of the separate State statutes challenged, there is not in my judgment the essential ingredient that under 28 U.S.C. § 2281 must be present. The section in the pertinent portion states the three-judge court is required when "an interlocutory or permanent injunction restraining the enforcement, operation and execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute" is sought. Despite the naming of the Superintendent of the Banking Department in the title and the linking of Article IX (9) of the New York State Banking Law with the statute in the allegations of the complaint, Article 3–A of the New York Personal Property Law, with its detailed statutory provisions in my judgment is the one governing and general state statute authorizing and controlling wage assignment execution and use in New York. Unless there is state action reasonably connected with that law, the necessary support for the three-judge composition is missing. The New York Banking Law inclusion in the Complaint in my judgment is an attempt to fill in the requirement for state action in regard to the wage assignment law of New York in its Personal Property Law and afford the name of a State official to place in the title of the action.

■ There is settled law that a State officer cannot be named perfunctorily or as a nominal defendant in an attempt to attain the wanted official action. (Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed. 643; Wilentz v. Sovereign Camp, 306 U.S. 573, 579–580, 59 S.Ct. 709, 83 L.Ed. 994; Oklahoma Gas & Electric Co. v. Okla-

homa Packing Co., 292 U.S. 386, 390–391, 54 S.Ct. 732, 78 L.Ed. 1318). I agree with the position of the defendants that the State Banking Superintendent plays no role in the implementation of the Personal Property Law provisions which by their terms are self-executing and authorize generally wage assignments in New York by private parties. (See Kadlec v. Illinois Bell Telephone Company, 7 Cir., 407 F.2d 624, 626). Article IX (9) of the New York Banking Law, entitled Licensed Lenders, does confer in Section 340 upon the Superintendent licensing power necessary for persons and companies to engage in the business of making loans of money, credit, goods or things in action. Section 355 of the Banking Law in legalistic form provides that transactions by the licensed lender not exceeding $1400.-00 and involving sale, assignment or order for payment of wages shall be deemed a loan secured by the assignment and expressly subject to the provisions of Article 9, the Banking Law Article. There is no reference therein to the Personal Property Law provisions concerning wage assignments.

There is no interrelationship evident to me between the particular province of the Superintendent in his domain of banking supervision and the general wage assignment provisions in Article 3–A—Assignment of Earnings, of the Personal Property Law. It should be noted that § 49 of this Personal Property Law Article states that certain provisions in Sections 47 and 48 of that law do not apply to wage assignments given to any bank, trust company or credit union doing business in New York. The interplay between the two statutes in my judgment is minimal and their combination in the complaint here does not supply a state officer to be enjoined from enforcing and executing the fundamental statute challenged that governs wage assignments in New York, i. e. the Personal Property Law of New York. It would call for the reasoning of an aerialist, I think, to bounce from one statute to the other as the plaintiffs would reason, and thereby hold the Superintendent of Banking as the responsible official for the enforcement and execution of the actual wage assignment law of New York. The contention by plaintiffs that the defendant finance companies, Protective and Beneficial, Licensed Lenders under Banking Law authorization, are also State officials within the meaning of 28 U.S.C. § 2281 is flimsy to my mind and the legal authorities offered by plaintiffs in that regard are ineffective support. It is interesting to note that in one of the cases cited by plaintiffs, Klim v. Jones, supra, in which the Innkeeper lien law of California was invalidated there was no attempt to name a State officer in an attempt to gain a three-judge statutory Panel.

There are the writings that give expansive interpretation for presence of state action to embrace private conduct in unusual factual settings. (See United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267; Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed. 2d 830, affirming Supreme Court of California; Adickes v. S. H. Kress & Co., supra; Burton v. Wilmington Pkg. Auth., 365 U.S. 715, 721, 725, 81 S.Ct. 856, 6 L.Ed.2d 45). There is the language in United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L. Ed. 1368, referred to in Monroe v. Pape, supra, 365 U.S. at p. 184, 81 S.Ct. 473, that the "Misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." (See also Screws v. United States, 325 U.S. 91, 108–113, 65 S.Ct. 1031, 89 L.Ed. 1495). However, it seems clear these statements were made in a context of search for a private participation sufficient to come within the terms of substantive federal civil rights statutes and do not affect the requirement of real presence of a state officer to be enjoined in order to meet the requirement of three-judge composition under 28 U.S.C.

A. § 2281. (Moody v. Flowers, supra, 387 U.S. pp. 101–102, 87 S.Ct. 1544).

For future reference in this case due to my denial of a three-judge court that might be disagreed with on an appellate level, and also for aid in a number of other civil rights actions for varied grievances recently filed in behalf of plaintiffs other than prisoners in this District Court, it might be well to note the fruits of lengthy research in regard to judicial writings and principles as I find them pertinent to this and other similar litigation. There is the barrier presented in each instance by the Court of Appeals, Second Circuit, in Eisen v. Eastman, 2 Cir., 421 F.2d 560, interpreting Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, in such manner as to conclude that subject matter jurisdiction for civil rights claim is lacking unless the right or immunity allegedly infringed is one of personal liberty not dependent for its existence upon the infringement of property rights. The Court of Appeals, Second Circuit, has written extensively in attempts to clarify its position in that respect. The Court has placed welfare payment cases of certain types in a personal liberty category, but otherwise has remained steadfast in the application of the so-called Hague and Eisen property right v. personal liberty test for civil right claim jurisdiction. (Tichon v. Harder, 2 Cir., supra; Johnson v. Harder, 2 Cir., supra; see also Lynch v. Household Finance (D.C.Conn.) 318 F.Supp. 1111, prob. jur. noted 1971, 401 U.S. 935, 91 S.Ct. 962, 28 L. Ed.2d 214; Santiago v. McElroy (D.C. E.D.Pa.—three judges) 319 F.Supp. 284, 291; Escalera v. N.Y.C. Housing Authority, 2 Cir., 425 F.2d 853). Very recently the Second Circuit reaffirmed the Hague-Eisen formula as the applicable one for the requirement of subject matter jurisdiction. (Roberson v. Harder, 2 Cir., 1971, 440 F.2d 687; Campagnuolo v. Harder, 2 Cir., 1971 440 F.2d 1225). Both of these decisions point to the Johnson v. Harder, supra, 2 Cir., 1971, 438 F.2d 7, as the one containing the guides for exception of certain welfare

payment cases only from property right classification. (See also Roberts v. Harder, 2 Cir., 1971, 440 F.2d 1229). Justice Harlan in an eloquent discussion of the due process concept, however, writing for the majority stated that one may not be deprived of his rights, *neither liberty nor property*, without due process of law. (Italics mine; Boddie et al. v. Connecticut et al., 401 U.S. 371, 91 S. Ct. 780, 28 L.Ed.2d 113, decided March 2, 1971).

Another point to be discussed, for at least possible reference use in the future, is that in the part of Personal Property Law regarding wage assignments there are provisions for substantial time periods to elapse before the wage assignment may become effective as well as outlined procedures for court intervention. (N.Y. Personal Property Law §§ 46–c, 47, 47–a, 47–b, 47–c, 48). By § 47–e the wage assignment may be vacated by order of a court of record upon application of the assignor (wage earner), his employer or any person having an interest therein. The terms of this section for such court intervention upon application to vacate the assignment mandate expeditious consideration by a court of record. Such available court procedures with short time periods for return of the order to show cause authorized by the statute are pointed to by the finance companies here as striking differences from the deficiency in notice and hearing protection that formed the basis for holdings by the United States Supreme Court in Sniadach, supra, and of this District Court in LaPrease v. Raymours Furniture Co., Inc., supra, upon which these plaintiffs place primary reliance for their challenge on the merits.

Truth in lending and consumer credit protection has become a source of concern in these days wherein we have become particularly conscious of need for fair notice and hearing procedures, and rightly so, to protect the unwary and underprivileged from overreaching and unfairness in transactions of this kind. (See The National Commission on Con-

sumer Finance, by Robert Braucher, Chairman, New York State Bar Journal, February 1971 issue). Particularly on wage assignments there are diverse predictions as to their ultimate fate in the courts at least as to certain of their aspects. In an article in the New York State Bar Journal, November 1970 issue, "Garnishment Restrictions under Federal Law", Robert D. Moran, Administrator, Wage and Hour Division, U. S. Department of Labor, states his opinion that attempts to circumvent Title III, Consumer Credit Protection Act, eff. July 1, 1970, 82 Stat. 163, that limits the amount of wages that can be garnisheed, an issue in this action, by use of wage assignments may be a potential loophole in the federal Act that possibly the Courts will plug on the basis of the Sniadach reasoning. There is reference in Young v. Ridley, (D.C.D.C.), 309 F. Supp. 1308, 1312, fn. 11 to a Note, Wage Garnishment Before Hearing, 83 Harv. Law Rev. 113, 117–118 (1969) that suggested the United States Supreme Court would in all probability decline to void a state statute permitting wage assignment practice.

On abstention several important rulings in the New York Courts only on the lower level as yet concerning the vacating of wage assignments under Section 47–e should be set forth. (Bailey v. Upstate Loan, 205 Misc. 535, 132 N.Y.S.2d 396; Cajuste v. Budget Credit, Inc., 5 Misc.2d 948, 162 N.Y.S.2d 748; Re Reid v. Budget Credit, Inc., 5 Misc.2d 949, 162 N.Y.S.2d 750; Re Edwards Budget Credit, Inc., 8 Misc.2d 897, 167 N.Y.S.2d 583). The plaintiffs argue that Section 47–e, Personal Property Law, allowing application to a court of record for relief is restricted by its wording to challenges that are based upon failure to comply with the formal requirements regarding the taking and filing of wage assignments as specified in other sections of Article 3–A on assignment of earnings. Plaintiffs say the New York lower courts have narrowly applied this judicial power. From the above cases there is evident, in my judgment, first,

at least the demonstration of a liberal attitude of these New York Courts to protect the wage earner. The decisions to my mind cannot be read conclusively as barring considerations of claims of fraud and deceit in the basic transaction or breach of warranty that plaintiffs allege in their complaint together with assertions that the requirements of the State statute as to content and delivery of copies were not complied with. At least no higher court of New York has interpreted the extent of the judicial power and extent of issues themselves that may be considered under Section 47–e and as yet consideration of fraud and breach of warranty in the underlying transactions are not beyond the reach of the statute by reason of rulings of higher New York courts. An application in Robert Quinones v. Household Finance Corp., N.Y.Sup.Ct., Kings County, Index No. 20421–69, raised the exact same constitutional questions of violation of due process and equal protection about a wage assignment as raised in this action. In the order to show cause, dated June 3, 1970, Supreme Court Justice Finn temporarily stayed the defendant Finance Company from taking any further steps to enforce the wage assignment until further order of the Court. Copies of the Order and the Petition of the Legal Aid attorney upon which it is based shall be filed with this decision in the Clerk's office of this Court. I do not know the outcome of the Quinones case, but it supports the presence of responsible and progressive attitude that I have found always in the New York Court system, alert always to protect individual and constitutional rights.

■ Further, if this New York statute is deficient, or not clear in its wording to prevent the injustice claimed by plaintiffs, then a common sense way to correct it would be to interest the Legislature of New York to change or improve the wording to embrace for court consideration fraud in lending and taking of the assignment. The Attorney General of New York has been foremost

in the Nation in the creation of bureaus and divisions in his office that police and act upon grievances of this kind. No policy by any lawyer or group of lawyers seems sensible that bypasses these channels that might easily correct and avoid the filing of these obvious burdensome suits in federal or state courts. Relief from hardships imposed by State statute is the responsibility of a state legislature unless some constitutional right is infringed. (Nelson v. New York City, 352 U.S. 103, 110–111, 77 S.Ct. 195, 1 L.Ed.2d 171). In the instant action, the complaint charges failure to comply with requirements of the Personal Property Law in such manner as giving undated copies and so forth. One cannot in the same proceeding both assail a statute and then rely upon it. (Hurley v. Commission of Fisheries, 257 U.S. 223, 225, 42 S.Ct. 83, 66 L.Ed. 206; Fahey v. Mallonee, 332 U.S. 245, 255, 67 S.Ct. 1552, 91 L.Ed. 2030). On the question of sufficient mailing to a last known address to meet constitutional requirements, the pertinent authorities are Schroeder v. City of New York, 371 U.S. 208, 212, 83 S.Ct. 279, 9 L.Ed. 2d 255; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313–315, 70 S.Ct. 652, 94 L.Ed. 865; Boddie v. Conn., supra, 1971, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113.

■ The class action form of complaint, which seems to have become routine in most of these type actions, does not seem to fit reasonably in my judgment the requirements for permission to so proceed in this action. It makes me wonder at times why the complexities of Federal Rule of Procedure 23 are entered into when the declaration of unconstitutionality for one would, or at least should, in effect proclaim unconstitutionality for all and prevent its application for all, named and unnamed, born and unborn. Christine Sniadach was the sole plaintiff in the case that reached the United States Supreme Court on garnishment procedures of Wisconsin. The ruling had great impact upon the commercial and financial world in all the States and inevitably will cause inspection of and change in the procedures for garnishee in all of them. In Klim v. Jones, supra, there was a single plaintiff and no representation by plaintiff for a class. In the LaPrease action in this District Court, Judge Port writing for the three judges noted that the Court had refused at the hearing to continue the actions as class actions. There is excellent discussion of the class action subject and proper application in Wright, Federal Courts 2nd Ed. (1970) Art. 72.

It is true that in civil right actions the class representation is ordinarily more favored. However, the complaints in this action to come within civil rights jurisdiction contain the individualistic claim that in one particular instance there was fraud and deceit practiced, and in the other fraud and deceit and breach of warranty. (See Lynch v. Household Finance Co., supra, 318 F. Supp. at p. 1114). Where there is possible variance in factual situations, and where a statute may be unconstitutional as applied to certain members of the purported class and yet may be constitutional as applied to others, class action treatment may be inappropriate. (Dale v. Hahn et al., 2 Cir., 1971, supra, 440 F.2d 633). Another sound reason, of course, to refuse class action status is that the defendants Beneficial and Protective are two of many institutions using wage assignments in the course of their business.

The motion by plaintiffs to convene a three-judge court is denied. The motion by defendants Beneficial and Protective to dismiss insofar as the action is sought to be maintained as a class action is granted.

It is so ordered.